**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

BASILIO BLANCO, JR.,

       Petitioner,

v.                                      Case No. 8:03-CV-252-T-30MAP

JAMES V. CROSBY, JR., et al.,

       Respondents.

_____/

**O R D E R**

Petitioner, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). Petitioner is challenging his 1997 convictions for vehicular homicide (2 counts) entered by the Twelfth Judicial Circuit Court, Sarasota County, Florida. Respondent has filed a response to the petition (Dkt. 7), and Petitioner has filed a reply thereto (Dkt. 13). The matter is now before the Court for consideration on the merits of the petition.

**Background**

Petitioner was charged by information on October 3, 1996, with two counts of vehicular homicide (Dkt. 8, Ex. 001 at R. 1-3). Represented by retained counsel (Dkt. 8, Ex. 023, Transcript, Rule 3.850 Evidentiary Hearing, at R. 798), Petitioner proceeded to a trial by jury on June 2, 1997. The jury returned a verdict of guilty as charged on June 5, 1997 (Dkt. 8, Ex. 001 at R. 214). Petitioner was adjudicated guilty and sentenced on August 15, 1997, to serve a term of 18 years and 7 months.

On direct appeal, Petitioner asserted that (1) "the trial court erred in failing to suppress privileged post-accident statements made by [Petitioner];" and (2) "[Petitioner] was entitled

to a judgment of acquittal for vehicular homicide where the evidence failed to show he was driving recklessly" (Dkt. 8, Ex. 002).  The appellate court affirmed Petitioner's convictions and sentences without a written opinion on May 19, 1999.  *See Blanco v. State*, 736 So.2d 1187 (Fla. 2d DCA 1999) (table decision).

While his appeal was pending, Petitioner filed a motion to correct illegal sentence pursuant to Fla. R. Crim. P. 3.800 (Dkt. 8, Ex. 020, Attach., Motion to Correct Illegal Sentence).  The motion was denied on June 10, 1999 (Dkt. 8, Ex. 020, Attach., Order Denying Motion to Correct Illegal Sentence).  Petitioner's appeal of the trial court's order was stayed pending a decision by the Florida Supreme Court in *Heggs v. State*, 759 So.2d 620 (Fla. 2000) (invalidating the act containing the 1995 sentencing guidelines and certain provisions related to gain time because it violated the single subject rule). The appellate court reversed the trial court's decision on August 18, 2000, and the matter was remanded with instructions that the trial court "determine whether [Petitioner] in fact committed his offense within the *Heggs*[1] window and, if so, whether his sentence could not have been imposed under the 1994 guidelines without a departure." *Blanco v. State*, 765 So.2d 881 (Fla. 2d DCA 2000) (footnote added).  On January 5, 2001, Petitioner was resentenced to a term of 178 months (Dkt. 24 at 7).

On August 17, 1999, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850 raising two ineffective assistance of counsel claims (Dkt. 8, Ex. 008).  The trial court denied the Rule 3.850 motion on October 28, 1999 (Dkt. 8, Ex. 013). On May 10, 2000, the appellate court reversed and remanded the case to the trial court, finding that the limited record before it was insufficient to enable it to determine whether

---

[1]In *Trapp v. State*, 760 So.2d 924, 928 (Fla. 2000), the Florida Supreme Court held that those defendants whose offenses were committed on or after October 1, 1995, and before May 24, 1997, had standing to challenge their sentences under *Heggs*.

Petitioner was prejudiced by trial counsel's failure to file a pretrial motion to suppress the statements Petitioner made at the accident scene.  The trial court was instructed that on remand it either conduct an evidentiary hearing or attach to its order portions of the record conclusively refuting Petitioner's claims.  *Blanco v. State*, 769 So.2d 398 (Fla. 2d DCA 2000). Following an evidentiary hearing on April 25, 2001, the trial court entered another order denying Petitioner's Rule 3.850 motion (Dkt. 8, Ex. 023).  The trial court's decision was affirmed, with the mandate issuing on August 8, 2002 (Dkt. 8, Ex. 024).  *See Blanco v. State*, 825 So.2d 376 (Fla. 2d DCA 2002) (table decision).

Petitioner filed his federal habeas petition on February 13, 2003 (Dkt. 1).  In his petition, Petitioner asserts that (1) the trial court erred in failing to suppress privileged post-accident statements made by the Petitioner in violation of his *Miranda*[2] rights and violating his privilege against self-incrimination, further violating Petitioner's rights to the 5th, 6th, and 14th Amendments to the United States Constitution; (2) trial counsel [was ineffective for] failing to suppress and fail[ing] to object to Petitioner's incriminating statements to police officers during the investigation of the automobile accident in violation of the 5th, 6th, and 14th Amendments to the United States Constitution; and (3) [trial counsel] was ineffective when he was ignorant of the applicable case law that would have outweighed the trial court's reliance on *Johnson* and *Riley* in violation of Petitioner's rights to the 5th, 6th, and 14th Amendments to the United States Constitution.

Respondent acknowledges that the petition is timely and the claims are properly exhausted, but argues that it should be denied because Petitioner has failed to meet the

---

[2]Established in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Fifth Amendment right to counsel and right to silence are intended to operate prophylactically  to protect a defendant from making self-incriminating statements during his arrest or interrogation that might be used against him in the course of subsequent legal proceedings.  *Id.* at 478-79.

criteria for relief under 28 U.S.C. §§ 2254(d)-(e) (Dkt. 8 at 18). Having reviewed the record, the parties arguments, applicable statutes, and controlling case law, this Court agrees.

### Standard of Review

Since Petitioner's conviction was entered after the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted, his petition is subject to the provisions thereof. The standard of review required in a federal habeas corpus proceeding is quite strict, resulting in a heavy burden on the petitioner to successfully overturn a state court conviction. Where, as here, a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,  as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented  in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003).

"[W]hether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (citation omitted).  A state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Henderson*, 353 F.3d at 890-91.

4

**Evidentiary Hearing**

The Court has reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing. *See Smith v. Singletary*, 170 F3.d 1051, 1053-54 (11th Cir. 1999). The pertinent facts of the case are fully developed in the record before the Court. *See Cave v. Singletary*, 971 F.2d 1513, 1516 (11th Cir. 1992). Thus, no additional evidentiary proceedings are required. *See High v. Head*, 209 F.3d 1257, 1263 (11th Cir. 2000), *cert. denied*, 532 U.S. 909 (2001) (citing *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).

**Discussion**

On July 5, 1996, Petitioner was driving northbound on Highway 41 in Sarasota, Florida. As he approached the intersection of Highway 41 and Biscayne Boulevard, the traffic light changed from green to yellow. Petitioner's vehicle proceeded into the intersection and collided with the vehicle driven by Kenneth Ott. Mr. Ott died at the scene of the accident. His wife, a passenger in his vehicle at the time the accident occurred, died approximately two months later as a result of injuries she sustained.

When Officer Randy Ruth arrived at the scene to investigate the accident, he asked Petitioner what happened. At that time, Petitioner made certain statements regarding the accident. After Petitioner had been advised of his *Miranda* rights in Spanish at the police station on July 8, 1996, he made a second statement regarding the accident during a videotaped interview (Dkt. 8, Ex. 001, Vol. 1 at 34). Each of the claims raised in the present petition relates to statements Petitioner made to Officer Ruth during their encounter at the accident scene. Trial counsel did not file a pretrial motion to suppress Petitioner's statements.

**Trial Court Error**

In Ground One of his petition, Petitioner asserts that the trial court erred in failing to grant trial counsel's motion to strike/suppress statements Petitioner made to Officer Ruth at

5

the scene of the accident.

At trial, Officer Ruth testified that when he questioned Petitioner at the accident scene, they spoke in English. Petitioner told Officer Ruth that he was driving the vehicle which struck the victim's vehicle (Dkt. 8, Ex. 001, Vol. 3 at Tr. 417). When asked to produce his insurance and registration documents, Petitioner stated that they were inside his vehicle. *Id.* at Tr. 418.

The prosecutor then asked Officer Ruth whether Petitioner stated at what rate of speed he was traveling when the accident occurred. Trial counsel objected to the question, arguing that this information was given to Officer Ruth by Petitioner's 11-year-old daughter, who was the passenger in the vehicle when the accident occurred. According to trial counsel, Petitioner's daughter translated for him after he informed Officer Ruth that he had "problems with his English." *Id.* at Tr. 419. When the trial court judge asked trial counsel to explain the basis for his objection, the following exchange took place:

> Trial Counsel: If I can be given a minute here so I can make a consultation before we proceed, please?
>
> Court: What is it that we need to do, Mr. Rodriguez?
>
> Trial Counsel: I need to check my case law a minute Your Honor because I feel that this testimony is improper.  I'd like to provide to the Court –
>
> Court: No sir.  We're going to go on. If we need to talk about striking it, we can do that. This fellow's going to have to come back tomorrow.

*Id.* at Tr. 420.

When direct examination recommenced, Officer Ruth testified that when he asked Petitioner what happened, he responded that he was traveling north on Highway 41, and as he approached the intersection, he saw the traffic signal change from green to yellow. According to Officer Ruth, Petitioner stated that he applied the brakes in an attempt to stop his vehicle, but "slipped through the intersection, impacting the other car." *Id.* at Tr. 421.

Officer Ruth testified that Petitioner stated that he was driving at a speed of 40 to 45 miles per hour when the crash occurred. *Id.* Trial counsel did not make a contemporaneous objection to the admission of this testimony based on privilege.

Officer Ruth testified that after speaking with Petitioner, he talked with Petitioner's daughter about the accident. He then photographed and marked the accident scene, checked the road conditions, and looked for skid marks on the roadway. After discussing his findings with fellow officers and interviewing witnesses, Officer Ruth met with Petitioner again "just prior to the vehicles being removed from the roadway" because Petitioner wanted to remove something from his vehicle. Trial counsel again objected, and during discussions at the bench, the following exchange occurred:

> Trial Counsel: Judge, these are statements that were made during the course of the investigation. They are statements elicited from my client pursuant to questions made during the course of investigation by a police officer.
>
> I would submit that those matters were privileged as to this particular question or any answers made by my client to questions by this police officer at the scene. Those are privileged, and I would object to their introduction.
>
> I would also like to formulate a motion to strike with regards to any statements made by my client regarding speed and regarding anything that he responded to while at the scene pursuant to this investigation. *State v. Coffey,* 212 So.2d 632.[3]
>
> Court: You knew this was coming, of course?[4]
>
> Prosecutor: Judge, he never filed a pretrial motion. Under the law now you need to file motions –

---

[3] In *State v. Coffey*, 212 So.2d 632, 635 (Fla. 1968), the Florida Supreme Court created a new test for the application of the accident report privilege, holding that the investigating officer could "change hats" after completing the accident report and begin a criminal investigation into the accident. Statements obtained during the criminal investigation of the accident would be admissible provided "every precaution is taken to make sure that the accused's constitutional rights are protected." *Id.*

[4] During the Rule 3.850 evidentiary hearing, trial counsel testified that this comment was directed toward the prosecutor (Dkt. 8, Ex. 023, Transcript, Rule 3.850 Hearing, Apr. 15, 2001, at 19).

7

*Id.* at Tr. 426-27. After the trial court dismissed the jury, trial counsel moved to have any testimony regarding Petitioner's post-accident statements stricken from the record, citing Fla. Stat. § 316.066(4) as legal authority for the motion.  After hearing from the parties, the trial court stated:

> Well, let me put it this way.  At this point I agree with the state that there is no evidence of any kind that [Petitioner] was under custodial legal custody [sic] of any kind.  At this point there's no evidence.  So I guess the question would be, and what other constitutional rights could possibly have been violated since he didn't appear to be in custody, in fact, we know that for sure because he left. So I'm, it's not even one of those ones where you have to [illegible] between what the arresting officers - or the investigating officers say and the defendant says because the rebuttal testimony at this moment anyway is that [Petitioner] left.  So I don't think we have the custodial situation.  So I don't know what else it could be, quite frankly.

*Id.* at Tr. 429.  The trial court then agreed to hear counsels' argument on the issue the following morning.  *Id.*

When the trial court reconvened the following morning, the State asserted that trial counsel was effectively presenting a motion to suppress, which was untimely under Florida law, citing Fla. R. Crim. P. 3.190(i).  The State further argued that if the trial court were to entertain the motion despite its untimeliness, Petitioner's *Miranda* rights were not violated because he was not in custody when the statements were made, citing *State v. Johnson*, 695 So.2d 771 (Fla. 5th DCA 1997).

Trial counsel argued that Rule 3.190(i) gave the trial court discretion to entertain a motion to suppress on an appropriate objection at trial.  Trial counsel contended that while the issue was not addressed in any of the cases that examined Fla. Stat. § 316.066, since Fla. Stat. § 316.027 operated to prevent a driver from leaving the scene of an accident which resulted in injuries on penalty of charges of fleeing the scene, it effectively rendered the driver "in custody" and thus entitled to the same rights accorded an individual undergoing a

police custodial interrogation (Dkt. 8, Ex. 001, Vol. 4 at Tr. 451-53). Trial counsel further argued that since Fla. Stat. § 316.066 only allows the officer to ask the driver questions regarding his "identification, address, and drivers license information," Officer Ruth's questions went beyond the scope of the statute, in violation of Petitioner's constitutional right to refuse to answer questions that might put him in jeopardy of criminal prosecution (Dkt. 8, Ex. 001, Vol. 4 at Tr. 453).

Having afforded the parties an opportunity to argue their respective positions, the trial court found:

> First of all, as counsel points out, 3.190 regarding pretrial motions, and specifically Subsection (h), which is the closest to what we have on the motions to suppress evidence in unlawful search [sic], which is really not what we have, but it's as close as the rule seems to cover, in Subsection (4), the rule says the motion shall be made before trial unless opportunity therefore did not exist or the defendant was not aware of the grounds for the motion. And then it goes on to say but the Court may entertain a motion or the appropriate objection at the trial.
>
> I think Mr. Evelev's chronology of events, including the events of yesterday afternoon, are correct, or at least they are certainly unrebutted at this point, and the Court cannot come to any other conclusion but that the grounds for the motion have been existing for quite some time. And, arguably, the *Reilly* case that interprets the new editions [sic] to 316 regarding accident investigation was published in the Southern Reporter in 1993, so we have actual as well as constructive notice of all of those issues.
>
> But I don't want any reviewing authority to not also know that, as far as I'm concerned, assuming the Court could, in fact, entertain and would entertain the motion or appropriate objection at trial – and for purposes of my analysis, that's exactly what I'm going to do – I still don't think that there's anything that's been testified to that would take the statements out of what appears to be the holding in the *Reilly* case and subsequently seems to be reaffirmed, so as to speak, although it's a different district court of appeal, in *State v. Johnson*, which is the recent case that Mr. Evelev alluded to, at 22 Florida Law Weekly 1062.
>
> And both of those cases acknowledged that there was no custodial situation triggering the necessity to give *Miranda*. That appears to be the situation in this case. In fact, *Johnson* cites in footnote 8, I believe it is, the *Reilly* decision. The only question I had yesterday was application. I'm not sure *Johnson* helps

> us with application of *Reilly*, but I'm not about to engraft something that neither
> the case law nor the statute requires.  At this point, I'll deny the motion to strike
> both on timeliness and on substantive grounds.

*Id.* at Tr. 454-56.

After the trial court denied trial counsel's motion to strike/suppress, the State again adduced testimony from Officer Ruth that when interviewed at the scene of the accident, Petitioner stated that he was traveling north on Highway 41 approaching the intersection at a speed of 40 to 45 miles per hour when he saw the light change from green to yellow and applied the brakes in an attempt to stop. *Id.* at Tr. 474.

On direct appeal, Petitioner argued that the trial court erred in denying the motion to strike/suppress (Dkt. 8, Ex. 002 at 13).  When the appellate court affirmed Petitioner's convictions and sentences, it implicitly rejected his assertion of trial court error. *See Blanco v. State*, 736 So.2d 1187 (Fla. 2d DCA 1999) (table decision). Although the appellate court denied relief without entering a written opinion, in this circuit, a "state court's summary, which is to say unexplicated, rejection of the federal constitutional issue qualifies as an adjudication under § 2254(d) so that it is entitled to deference." *Isaacs v. Head*, 300 F.3d 1232, 1259 (11th Cir. 2002) (citing *Wright v. Sec. of Dept. of Corrs.*, 278 F.3d 1245, 1255  (11th Cir. 2002)).

Petitioner's assertion that the trial court erred in refusing to suppress the statements he made to Officer Ruth at the accident scene under Florida's accident report privilege clearly raises an issue of state evidentiary law. In general, federal courts are reluctant to second-guess state evidentiary rulings, recognizing that states deserve wide latitude in that area. *Maness v. Wainwright*, 512 F.2d 88, 92 (5th Cir. 1975). In the absence of a violation of constitutional magnitude, federal habeas corpus relief is rarely deemed appropriate for claims predicated on allegations of state evidentiary error. *Boykins v. Wainwright*, 737 F.2d 1539, 1543-44 (11th Cir.), *cert. denied*, 470 U.S. 1059 (1985).  In the present case, however,

the evidentiary ruling Petitioner challenges also presents a federal question involving the right against self-incrimination under the Fifth Amendment.  U.S. Const. amend. V.

In 1993, the Florida Supreme Court summarized the interplay between Fla. Stat. § 316.066 and the Fifth Amendment, recognizing that the Florida legislature's purpose in creating the accident report privilege was to allow law enforcement to obtain information about automobile accidents without violating the driver's right against self-incrimination. *State v. Norstrom*, 613 So.2d 437, 440 (Fla. 1993). Under *Norstrom*, the inquiry in determining whether a driver's statements at the accident scene are admissible at trial under § 316.066(4) focuses upon whether his Fifth Amendment right against self-incrimination was violated. *Id.* at 439 (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)).

In *Miranda*, the Supreme Court held that evidence obtained as a result of a *custodial interrogation* is inadmissible as having been obtained in violation of the Fifth Amendment right against self-incrimination unless the defendant had first been advised that he had the right to have counsel present during any questioning and the right to remain silent and if he gave up those rights, anything he said could be used against him in a court of law.  If after being apprised of his rights, the defendant knowingly and voluntarily waived those rights, evidence obtained as a result of the interrogation is admissible at trial. 384 U.S. at 444-57. The protections of *Miranda* do not, however, extend to voluntary statements made to law enforcement officers.

> Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

384 U.S. at 478 (footnote omitted).

11

The *Miranda* court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* In considering trial counsel's argument in support of the motion to strike/suppress, the trial court determined that Petitioner was not in a "custodial situation" when he responded to Officer Ruth's questions because there was no restraint on his freedom to leave (Dkt. 8, Ex. 001, Vol. 3 at Tr. 429). The trial court's determination on the custody issue is a mixed question of fact and law that is not entitled to the statutory presumption of correctness accorded state court decisions under 28 U.S.C. § 2254(e), but the Court must give deference to unrebutted findings of fact made by the trial court in the course of deciding the issue. *See Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001), *cert denied*, 534 U.S. 1046 (2001).

While Petitioner contends that his "*Miranda*" rights were violated, he does not assert that he was "taken into custody or otherwise deprived of his freedom of action in any significant way" at the accident scene. *See Miranda*, 384 U.S. at 444."General 'on-the-scene questioning' . . . concerning the facts and circumstances surrounding a crime or other general questioning of citizens during the fact-finding process do not trigger *Miranda* warnings." *Garcia v. Singletary*, 13 F.3d 1487, 1489 (11th Cir. 1994).

The pre-*Miranda* exchange between Officer Ruth and Petitioner does not reveal any of the significant restraint of freedom characteristics of a custodial interrogation. Having no indication of the commission of a crime, Officer Ruth's initial inquiry was merely an attempt to investigate. Petitioner fails to present any facts which would warrant concluding otherwise. *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

Since Petitioner failed to demonstrate that his statements were the product of a custodial interrogation, his statements were admissible under a limited exception to the

12

accident report privilege created by the Florida legislature in 1991. This exception allows law enforcement officers to testify "at a criminal trial . . . as to any statement made to the officer by the person involved in the accident if that person's privilege against self-incrimination is not violated." Fla. Stat. § 316.066(4) (1993). Thus, the state court's finding that the trial court did not err in denying the motion to suppress the statements Petitioner made to Officer Ruth, implicit in its decision affirming Petitioner's conviction, is supported by the record.

The Court finds that Petitioner has failed to establish that the state court's adjudication of this claim was contrary to, or an unreasonable application of, clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Thus, this claim lacks merit.

**Ineffective Assistance of Counsel**

In Grounds Two and Three, Petitioner asserts that he was denied his Sixth Amendment right to effective assistance of counsel. According to Petitioner, trial counsel was ineffective for (1) "fail[ing] to suppress and fail[ing] to object to [Petitioner's] incriminating statements to police officers during the investigation of the automobile accident in violation of the 5th, 6th, and 14th Amendments to the United States Constitution;" and (2) "[being] ignorant of the applicable case law that would have outweighed the trial court's reliance on *Johnson* and *Riley* in violation of Petitioner's rights to the 5th, 6th, and 14th Amendments to the United States Constitution" (Dkt. 1 at 10; 24). Because the two claims are intrinsically intertwined, they will be addressed together.

To establish a prima facie claim of ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at

13

688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Eleventh Circuit has held that "[w]hen applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998).

Not dissuaded when his claim that the trial court erred in failing to suppress his post-accident statements to Officer Ruth was rejected on direct appeal, Petitioner raised the issue again in the guise of ineffective assistance of counsel claims in his Rule 3.850 motion (Dkt. 8, Ex. 008).  The trial court denied the claims, stating:

> This matter is before the court on the Defendant's *pro se* Motion for Post Conviction Relief (the "Motion") filed pursuant to Fla. R. Crim. P. 3.850 on August 17, 1999. The court has carefully considered the motion, reviewed the court file, and is otherwise duly advised in the premises.
>
> By order entered on August 31, 1999, the court directed the State Attorney to file a response to the Defendant's Motion for Post Conviction Relief. (See attached copy of Order Directing State Attorney to File Response to Defendant's Motion for Post Conviction Relief (without attachments)). The State's response was received in this office on October 27, 1999.
>
> Defendant raises two claims for post conviction relief in his Motion. The Defendant's claims, the State's response to those claims and the court's findings with respect to those claims are as follows:
>
> 1. Defendant was denied the effective assistance of counsel by counsel's failure  to file a pretrial motion in limine or motion to suppress statements.
>
> The Defendant argues that his counsel failed to file a pretrial motion to suppress or motion in limine regarding statements he made to the investigating officers at the scene of the accident. Defendant contends that the statements should have been suppressed since they were taken in violation of his accident report privilege. The Defendant claims his attorney failed to apprise the trial court of contrary case law that supported counsel's untimely objection at trial, which should have resulted in the suppression of the statements. As a result, the Defendant claims his attorney negligently waived appellate review of this issue.

The State's response to both claims is premised on the State's argument that the issue which is the subject of the Defendant's claims, was, in fact, heard on the merits and denied by the trial judge. The State argued that, since the trial judge heard defense counsel's argument and denied the motion as factually without merit, the alleged untimeliness of the motion did not prejudice the outcome of Defendant's case. Further, the State argued that, since the issue concerning the Defendant's statements was presented on direct appeal, the Defendant should not be allowed to use an ineffective assistance of counsel argument to raise the same issue in a motion for post conviction relief.

The Defendant's Motion is denied. As the record reflects, the trial judge ruled on the factual merits of the Defendant's motion in limine, and determined that the motion was substantively without merit. (See attached copy of transcript, pp. 455-56). The court heard extensive argument from defense counsel on the issue and the court ruled after hearing that argument. (See attached copies of transcript, pp. 429-30, 451-454). As the State correctly argues, the Defendant can not now use the guise of an ineffective assistance of counsel argument to raise the same issue that he previously raised on appeal. (See attached copy of Initial Brief of Appellant). *See also Lopez v. Singletary*, 634 So. 2d 1054, 1056 (Fla. 1993) (Ineffective assistance claim procedurally barred where substance of claim rejected on appeal); *Arch Southeast Communications, Inc. v. Abraham Communications, Inc.*, 702 So. 2d 556 (Fla. 2d DCA 1997) (per curiam affirmed decision can establish law of the case). Finally, since the issue was, in fact, fully litigated at both the trial and appellate levels, the Defendant has failed to show how he was prejudiced by counsel's alleged omission.

2. Defendant was denied the effective assistance of counsel by counsel's failure to make a timely objection at trial.

In a corollary to ground one, Defendant claims that his attorney failed to make a timely objection to testimony elicited by the State Attorney concerning statements made by the Defendant at the scene of the accident. The Defendant claims his attorney did not claim the statements were obtained in violation of the Defendant's accident report privilege until after all the objectionable statements were heard by the jury. As a result, the Defendant contends his attorney erroneously waived appellate review of this issue.

The Defendant's Motion is denied for the same reasons stated in this order under ground one above.

Dkt. 8, Ex. 014. In support of its order finding that Petitioner failed to show how he was

prejudiced by trial counsel's performance,[5] the trial court attached a copy of the order

_____

[5]Guided by the *Strickland* decision, the Florida Supreme Court has held that to succeed on an ineffectiveness assistance of counsel claim, the petitioner must satisfy two elements: he must show that trial counsel's performance was deficient <u>and</u> that the deficient performance prejudiced the defense. *See Stewart*

directing the State to respond to Petitioner's Rule 3.850 motion, portions of the trial transcript, and Petitioner's Initial Brief on direct appeal.  *Id.*

Noting that the trial court failed to attach sufficient portions of the record to its order to conclusively refute Petitioner's claims, the state appellate court reversed the trial court's decision and remanded the matter for further proceedings. *See* discussion *supra*.  Following an evidentiary hearing, the trial court again denied Petitioner's Rule 3.850 motion, finding as follows:

> By its opinion of May 10, 2000, the District Court of Appeal, Second District, reversed the trial court's summary denial of the Defendant's motion for post-conviction relief. The case was remanded to the trial court to either conduct an evidentiary hearing or attach to its order portions of the record conclusively refuting the Defendant's claim that he was prejudiced by his attorney's failure to file a pre-trial motion to suppress statements made by him to the law enforcement officer investigating the motor accident which was the subject of this case.
>
> A hearing was held on April 25, 2001, at which the Defendant's trial attorney, Nelson Rodriguez, testified that he knew about the possible legal issues regarding the "accident privilege" but chose not to file a pre-trial motion because be believed the motion would not be granted. No other evidence was presented at the hearing.
>
> A review of the complete transcript of the trial leads this court to conclude that the Defendant was not prejudiced by the failure of his trial lawyer to file a pre-trial motion to suppress.
>
> Whether the defendant's lawyer had filed a motion to suppress before the trial, or, as in this case, made the motion during the trial, the result would have been the same. The complete portion of the testimony, the legal arguments, and the trial court's reasoning is attached to this order.
>
> Defendant appealed his conviction. He specifically raised as error the trial court's denial of his motion to exclude statements made by him to the

---

*v. State*, 801 So.2d 59, 64-65 (Fla. 2001) (citation omitted). "When a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other prong." *Id.* at 65. *See also Strickland*, 466 U.S. at 697.  Once the trial court found that Petitioner failed to demonstrate that he was prejudiced by trial counsel's failure to file a pretrial motion to suppress, *see* Dkt. 8, Ex. 023 at R. 398, there was no need for it to consider whether trial counsel's performance fell below the level of effectiveness guaranteed by the Sixth Amendment.

investigating officer at the accident scene. A copy of the pertinent portions of his brief is attached to this order. The conviction was affirmed by the District Court of Appeal, Second District, without opinion.

The testimony of two eye witnesses to the accident, Claire Charette and Freda Kaiser[,] described the incident and supported the state's position that the Defendant failed to stop and was driving recklessly. Their testimony is attached to this order.

Officer Randy Ruth testified that at the scene of the accident, the Defendant told him that he estimated his speed at 40 to 45 miles per hours; that he was traveling the northbound lanes of U.S. 41; that as the light turned yellow, he attempted to stop; and that he slipped through the intersection, striking the victim's motor vehicle. These statements were the subject of the Defendant's motion to suppress or to strike.

Officer Ruth and an interpreter, Juan J. Florenza, testified to statements made by the Defendant to Officer Ruth and the interpreter later at police headquarters. In those statements, the admissibility of which was not challenged, the Defendant stated that he was already into the intersection when the traffic light changed to yellow; that the blue car (the victim's automobile) was turning left in front of him; and that he was going about 40 miles per hour. That testimony is attached to this order.

Brad Orlando, a mechanic for the city of North Port, Fleet Maintenance Division, testified that he inspected the brake system on the motor vehicle Defendant had been driving; found nothing wrong with the brake system; and found no evidence of brake lockup on the vehicle's tires. That testimony is attached to this order.

The Defendant's daughter, Yiwette Patino, testified on direct examination that it had been raining; that the street was wet; that the Defendant said something like "Why this don't stop?"; and that he was pressing the brakes. Her testimony is attached to this order.

The Defendant did not testify.

Officer Randy Ruth testified as a rebuttal witness that when he interviewed the Defendant's daughter, she did not tell him that the light had changed to yellow, nor did she tell him that the Defendant had said to her "What's wrong with the brakes?" That testimony is attached to this order.

Because there was some discussion in the May 10, 2000, opinion of the District Court of Appeal that the statements which were not suppressed nor stricken might have been the primary feature of the trial, a copy of the transcript of the entire final argument of the state and the defense is attached to this order.

17

> From a review of the entire transcript of the trial, and especially those portions
> of the transcript which are attached to this order, the court finds that the motion
> for post-conviction relief should be denied.

Dkt. 8, Ex. 023 at R. 397-99.

While the trial court failed to cite the standard enunciated by the Supreme Court for ineffective assistance of counsel claims, *see Strickland v. Washington*, 466 U.S. at 687, a state court does not have to cite Supreme Court precedent, or even be aware of it, so long as its decision is not inconsistent therewith. *See Early v. Packer*, 537 U.S. 3, 8 (2002); *Mitchell v. Esparza*, 540 U.S. at 17; *Parker v. Sec'y of Dep't of Corr.*, 331 F.3d 764, 775-76 (11th Cir. 2003). Thus, to establish that he is entitled to relief on these claims, Petitioner must establish that the trial court incorrectly applied the *Strickland* standard in reaching its determination that the claims raised in his Rule 3.850 motion lacked merit.

The record reveals that on remand, the trial court appointed counsel to represent Petitioner and held an evidentiary hearing on his claims. During the hearing, trial counsel testified that from the time he graduated law school in 1990, through August 8, 1994, he worked as an assistant state attorney engaged in the practice of criminal law. When he represented Petitioner in 1997, trial counsel had been in private practice for three years, specializing in criminal defense.

Trial counsel testified that he was familiar with the accident report privilege before proceeding to trial in Petitioner's case and had discussed the possibility of having any testimony regarding Petitioner's statements excluded on that ground with other attorneys (Dkt. 8, Ex. 023, Transcript of Rule 3.850 Evidentiary Hearing at R. 801). Trial counsel further testified:

> I recall that [Petitioner] was interviewed by the police and did discuss some,
> some elements of the, of the crash with the police and then he, he left, he was
> allowed to leave.  Then there was another period of time where he was

18

> contacted by the police, went to speak to the police officers and while there was, I believe, read *Miranda* and at that point I felt it was a custodial interrogation. I didn't feel so much that it was a custodial interrogation at the scene of the crime, of the alleged crime in this case, and I made simply a decision that I wasn't going to follow up with a motion to suppress in that regard. . . . I thought it would be denied. I thought it would be denied, because given the sequence of events, I felt that a judge would look at it, compare that scenario to the second scenario where he was interviewed at the police station and would conclude that he was not under custodial interrogation at that particular point in time. I didn't feel that the officers would say he wasn't free to leave and that he was, that he was detained at that point for any reason.

*Id.* at 801-02. When asked whether at the time he made the decision not to file a motion in

limine, he was planning to object to the admissibility of testimony regarding Petitioner's post-

accident statements during the trial, trial counsel responded:

> You know, when you, when you try criminal cases, you don't always know exactly how things are going to pan out and how the testimony's going to come out and a lot of the decisions that you make, you make as the trial, as the trial follows its course, and there was a time at the trial that I felt that I would object and raise the issue, even though I had not raised it previously. I raised it at the point that I felt was appropriate to prevent the evidence from coming in and to suggest to the judge that, that perhaps this ought to be looked at a little closer at that point – . . . . and make some determinations.

*Id.* at 803-04.

Having reviewed the transcript of trial counsel's testimony at the Rule 3.850 hearing,

applicable statutes, and controlling case law, *see Strickland*, 466 U.S. at 699, the Court finds

that trial counsel's decision to forego objecting to the admissibility of Petitioner's statements

until what was, in his judgment, the "appropriate" point in the trial was clearly a strategic

decision. As noted in *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994), *cert.*

*denied*, 513 U.S. 1115 (1995), the Supreme Court has mandated a highly deferential review

of counsel's conduct, especially where strategy is involved. Intensive scrutiny and

second-guessing of attorney performance are not permitted. *Strickland*, 466 U.S. at 690

(holding that "[j]udicial scrutiny of counsel's performance must be highly deferential."). As

19

the Supreme Court recognized in *Strickland*, "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Id.* at 693. The burden of persuasion is on Petitioner to prove, by a preponderance of competent evidence, that trial counsel's performance was unreasonable. *Id.* at 687.  Petitioner has not met this burden.

Based on his assessment of the facts, trial counsel concluded that filing a pretrial motion to suppress based on the accident report privilege would be futile because, in his opinion, Petitioner was not subjected to custodial interrogation at the accident scene. In light of the emphasis placed on the driver's privilege against self-incrimination in the 1991 amendment to § 316.066(4) and the holdings in *Miranda*, 384 U.S. at 444, and *Norstrom*, 613 So.2d at 439 (finding that the proper inquiry in determining whether statements made by a driver at the accident scene are admissible at trial focuses upon whether the statements were obtained in violation of the defendant's Fifth Amendment rights against self-incrimination), there can be little question, even without application of the presumption of adequate performance under the *Strickland* standard, 466 U.S. at 689, that trial counsel's strategy, though unsuccessful, was not the result of unreasonable professional judgment.

As to Petitioner's assertion that trial counsel was ineffective for failing to support the motion to strike/suppress his statements by citing *State v. Marshall*, this claim likewise lacks merit.  695 So.2d 719, 721 (Fla. 3d DCA 1996) (upholding circuit court's finding that the trial court erred in allowing the officer to testify about statements made by the defendant during the criminal investigation of the accident without *Miranda* warnings) (*"Marshall I"*). Petitioner raised this claim in his Rule 3.850 motion.  Although the trial court did not cite *Marshall I* in its order denying Petitioner's Rule 3.850 motion, it explicitly rejected this claim, finding that Petitioner failed to establish that he was prejudiced by trial counsel's failure to "apprise [it]

20

of contrary case law" (Dkt. 8, Ex. 14).

When Petitioner proceeded to trial, there was a split in Florida's district courts regarding the viability of the accident report privilege following the 1991 amendments to Fla. Stat. §§ 316.062, and 316.066.[6]  In *Marshall I*, the Third District Court of Appeal recognized that the 1991 amendment to § 316.066(4) created a limited exception to the accident report privilege that allows a law enforcement officer to testify "as to any statement made to the officer by the person involved in the accident if that person's privilege against self-incrimination is not violated."   695 So.2d at 722; Fla. Stat. § 316.066(4) (1993). After examining the language of the 1991 amendments to §§ 316.062(3) and 316.066(4), the *Marshall I* court held that  § 316.062(3) "should be interpreted as applying solely to the duty to give information and render aid set forth in [§] 316.062" and certified direct conflict with the holding in  *State v. Riley,* 617 So.2d 340 (Fla. 1st DCA 1997), that following the 1991 amendments to § 316.062 and § 316.066(4), no driver could be "compelled by statutory requirement to give incriminating information to a law enforcement officer investigating a traffic accident," *id.* at 342.  *Marshall I*, 695 So.2d at 724.  On June 5, 1997, the Florida

---

[6]In 1991, the Florida legislature added subsection (3) to § 316.062:

> The statutory duty of a person to make a report or give information to a law enforcement officer making a written report relating to an accident shall not be construed as extending to information which would violate the privilege of such person against self-incrimination.

1991 Fla. Laws ch. 91-255.  The same session law amended § 316.066(4) by adding the underlined language:

> [E]ach accident report made by a person involved in an accident and any statement made by such person to a law enforcement officer for the purpose of completing an accident report required by this section shall be without prejudice to the individual so reporting. No such report or statement shall be used as evidence in any trial, civil or criminal. However, subject to the applicable rules of evidence, a law enforcement officer at a criminal trial may testify as to any statement made to the officer by the person involved in the accident if that person's privilege against self-incrimination is not violated.

1991 Fla. Laws ch. 91-255.

Case 8:03-cv-00252-JSM-MAP   Document 16   Filed 03/17/06   Page 22 of 24 PageID 297

Supreme Court approved and adopted the holding in *Marshall I*.  *See Marshall II*, 695 So.2d 686 (Fla. 1997). Disapproving the holding in *State v. Riley*, the court stated that "[i]f the legislature had intended to eliminate the statutory requirement that drivers give accident reports to investigating officers, it would have said so in clearer language." *Id.* at 686-87. On the day the decision in *Marshall II* was rendered, the jury returned a verdict finding Petitioner guilty as charged.

Petitioner argues that had trial counsel cited *Marshall I* and informed the trial court that the circuit's were split over the scope of the accident report privilege following the 1991 amendment to the § 316.066(4), the trial court would have granted trial counsel's motion to strike/suppress. This argument fails for several reasons. First, the decision in *Marshall I* had no precedential value in the judicial circuit where Petitioner was tried. Second, the decision in *Marshall I* had no effect on the weight accorded the *Riley* decision.  Until the Florida Supreme Court entered its decision disapproving the holding in *Riley* on June 5, 1997, *Riley* remained good law.  The existence of a conflict amongst sister courts regarding the application of Florida's accident report privilege had no effect on the continued validity of the *Riley* decision.[7]

As to Petitioner's argument that if cited, *Marshall I* would "outweigh" the decision in *State v. Johnson*, a case cited by the State in opposition to trial counsel's motion to strike/suppress, this argument is likewise unavailing to Petitioner's cause.  695 So.2d 771, 774 (Fla. 5th DCA 1997) (holding that since the defendant was not in custody or under arrest when he told the officer that he was the driver of the automobile involved in a fatal accident,

_____

[7]Trial counsel argued the motion to strike/suppress on June 4, 1997.  Counsel is not, however, required to be prescient. *See United States v. Ardley,* 273 F.3d 991, 993 (11th Cir. 2001); *Spaziano v. Singletary,* 36 F.3d 1028, 1039 (11th Cir. 1994) ("We have held many times that '[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.' " (citations omitted))

his statement was not clothed with "accident privilege" immunity). To the contrary, the *Johnson* court actually cited both *Marshall I*, *id.* at 774 n.7, and *Riley*, *id.* at 774 n.8, in support of its finding that Johnson's statements were not "clothed with the 'accident privilege' immunity,  because [his] Fifth Amendment rights were not impacted at that point." *id.* at 774 (footnotes omitted).

Finally, in *Marshall I*, the court recognized that under § 316.066(4), absent a violation of the privilege against self-incrimination, a driver's statements to a law enforcement officer at the accident scene were admissible under the "limited exception" to the accident report privilege created by the Florida legislature in the 1991 amendments to the statute. *Marshall I*, 695 So.2d at 722.  Thus, *Marshall I* was clearly inapposite to Petitioner's cause.  For these reasons, the Court finds that trial counsel's failure to cite *Marshall I* in support of his argument that Petitioner's statements were inadmissible was not outside the realm of prevailing professional norms. *See Strickland*, 466 U.S. at 690.

Having failed to satisfy *Strickland*'s two-prong test, Petitioner has not established that his constitutional right to effective assistance of counsel was violated. The trial court's rejection of Petitioner's ineffective assistance of counsel claims is not contrary to, or an unreasonable application of, clearly established Federal law or an unreasonable determination of the facts of Petitioner's case. 28 U.S.C. § 2254(d).  Petitioner is, therefore, not entitled to federal habeas relief on either of these claims.

To the extent that Petitioner's assertion in his reply that the trial court erred in conducting the Rule 3.850 evidentiary hearing without him being present may be considered to raise a claim for habeas relief, errors by a post-conviction court are not cognizable under § 2254.  It is well-settled that a petitioner's claim which goes to issues unrelated to the cause of detention does not state a basis for federal habeas relief. *See Quince v. Crosby*, 360 F.3d

1259, 1261 (11th Cir. 2004) (citing *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (involving claims as to errors at a hearing on the petitioner's 3.850 motion)); *see also Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotes omitted); *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (agreeing with the majority view and holding that "a petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings").

## Conclusion

For the foregoing reasons, the Court finds that Petitioner does not meet the criteria for relief under 28 U.S.C. § 2254.

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus is **DENIED**. Dkt. 1.

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on March 17, 2006.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copy furnished to:
All Parties of Record
SA:jsh

24